you will have your time right there when it turns yellow you just have a little bit of time left when it turns red you're done now if we're still asking you questions you have to stay but if we're not you need to stop okay so with that case number 24-30107 u.s. versus James and we'll begin with the u.s. with Caroline Gardner good morning Thank You judge Haynes may it please the court Caroline Gardner on behalf of the United States the law in this circuit is clear that a stop may have more than one initial justification for instance both a traffic violation and a reasonable suspicion of drug trafficking it's likewise clear that where a stop is so duly justified that an officer's actions may permissibly extend beyond the parameters of a run-of-the-mill traffic stop if reasonably related in scope to the drug crime justification of course that language refers to the Terry two-step test which asks first whether a stop is justified at its inception and second whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop in the first place here the district court aired at step one of the Terry analysis when it held that the only constitutionally legitimate reason for stop was the pretextual window tent violation by failing to recognize the court did not even reach step two of course the United States admits that probable cause existed from the alright so you're arguing on that and if we ended up and I'm not saying we will but if we ended up agreeing with you on that should we remand for the district court to consider in the first instance or is that something that you think we should consider and determine now your honor I think that this court is fully prepared and able to make that assessment itself based on the record that's been developed below that argument was certainly presented to the district court in fact and mr. James's own post hearing brief he acknowledged that the stop had two justifications he simply acknowledged that the drug trafficking justification was based only on a probable cause of drug trafficking and so where mr. James conceded that there was at least reasonable suspicion of drug trafficking prior to the stop he argued that this was actually a de facto arrest and so only probable cause would suffice to justify his detention beyond the consensual search so if this court does agree that probable cause existed from the outset of the stop then of course the length of the detention is simply not at issue but even where a policeman lacks the precise level of information to establish probable cause to arrest the Supreme Court has made clear that the Fourth Amendment does not require a police officer to simply shrug his shoulders and allow a crime to occur or a criminal to escape in fact a brief stop of a suspicious individual may be most reasonable to maintain the status quo momentarily while obtaining more information before they were attaining more information after they stopped him I'm sorry your honor they were trying to get like a warrant and so on after they stopped him yes your honor and in fact those efforts were underway prior to the stop no I understand that but this was kind of swirling down as they stopped him it was your honor but of course the investigative activity was underway prior to and separate from the stop the reason why the stop occurred is because mr. James left his apartment again under surveillance while the officers were seeking that rent roll search warrant and so that prompted a pretextual stop because lieutenant Webb testified that he believed that mr. James was likely getting on the interstate to head back to Texas which would have been entirely consistent with the information from Cedric Clay which was that mr. James was a well-known trafficker in the Houston area who would come weekly or sometimes bi-weekly to Baton Rouge to make drug deliveries and in fact that that's what he was doing on this occurrence and so beginning with speaking to the facts that were known beginning with that arrest of Cedric Clay nine days before this stop continuing through the independent investigation of both the East Baton Rouge Sheriff's Office and the DEA all of which corroborated mr. Clay's information as well as mr. James's surveillance on the morning of the stop and prior to the stop the totality of circumstances known to these experienced officers both prior to and throughout the stop certainly established at least a reasonable suspicion of drug trafficking and importantly as I just mentioned mr. James conceded below that several of the facts that were known to the East Baton Rouge Sheriff's Office prior to the stop established at least a reasonable suspicion of drug trafficking and the district court acknowledged both that the ongoing drug investigation had quote an important bearing on the deputies non-pretextual reasons for detaining James and also that the other searches including that rent rolls were quote rooted in probable cause and those facts all arose prior to the stop had nothing to do with the stop and so certainly where they established probable cause they at least supported a reasonable suspicion as well what's your best argument on collective knowledge since the one who stopped him obviously wasn't part of doing the investigation of course your honor I believe the law is clear in this circuit that as long as there's quote some degree of communication and the collective knowledge doctrine certainly applies here lieutenant Webb had all of the facts in his mind that were to this investigation and he was directing every single step of this investigation including the traffic stop he was not only visually monitoring the stop including the defendant and sergeants Dietrich and David who were at the stop with the defendant but he was in constant communication via radio with all of the officers involved he was coordinating the larger narcotics investigation and as sergeants David and Dietrich testified he was directing what was to occur at the traffic stop and how they were to proceed yet the district court ignored the undisputed testimony of all three law enforcement officers that the primary reason for this stop was the narcotics investigation there's no factual or legal basis to separate this stop from the narcotics investigation or from the probable cause that supported the search warrants and the other searches in this case of course there's no dispute that this was a pretextual stop but the entire premise of a lawful pretextual stop is that the law enforcement interest extends beyond the stated violation and to your point judge Haynes there's no legal basis to separate the stop from the narcotics investigation in part because of the collective knowledge doctrine which goes into the totality of circumstances that were known to all of these officers prior to the stop the law tells us that we have to consider the totality of circumstances we can't consider each factor in isolation or one one part of the investigation separate from another part of the investigation this was all part and parcel of one large ongoing narcotics investigation so assuming that this court agrees that there was reasonable suspicion of drug trafficking and that that was an initial justification for the stop in this case then at step two of the Terry analysis and assessing whether a detention is prolonged the relevant question is whether the police diligently pursued a means of investigation that was likely to confirm or dispel their drug trafficking suspicions quickly and there are two components there they not only need to diligently pursue their means of investigation but they need to be likely to confirm or dispel the suspicions quickly that's certainly what happened in this case based on the totality of the investigation coupled with James's movements that morning which included him briefly visiting his storage unit empty-handed staying for about five minutes coming out with a blue bag taking that blue bag back to his apartment where he was known to have previously conducted at least one narcotics investigation and then to be stopped thereafter the police were certainly diligently pursuing a means of investigation when they executed a dog sniff at that storage unit once they identified which one was Mr. James's and at that point the canine officer only had to go maybe a block away to run his dog and indeed in less than four minutes the dog actually alerted at narcotics at that storage unit so not only were those means of investigation designed to likely confirm or dispel their suspicions quickly but in this case indeed they did and Mr. James does not point to you and the record is devoid of any evidence that these officers did not diligently pursue a means of investigation likely to confirm their suspicions quickly I would submit that these officers were acting in a swiftly developing situation from the time that they learned that Mr. James was heading to Baton Rouge set up their surveillance around five o'clock that morning and surveilled his movements and undertook additional investigative activity I believe that they were acting deliberately and reasonably in response to the evolving conditions in this investigation at the end of the day if a stop can be justified on reasonable suspicion of drug activity which we know that it can based on the precedent in this circuit not only the rains case which says that even if all you have is a reasonable suspicion of drug trafficking but also the Zamora case and the Powell case which says if you have a traffic violation and a reasonable suspicion of drug trafficking you can have those dual justifications and if this stop was so justified which the facts clearly support and even Mr. James conceded below and if the officers subsequent actions were reasonably related in scope to that drug trafficking investigation which here they were for the reasons that I've just explained and in fact the dog the dog did confirm those drug trafficking suspicions quickly then certainly these officers acted both reasonably and lawfully and the district court suppression order should be reversed if there are no additional questions I'll reserve my time okay thank you you've turned reserved time for rebuttal all right we're here on behalf of Michael James from Caitlin Rallick's folks like that's all folks folks okay good morning your honors and may it please the court my name is Caitlin folks appearing on behalf of the appellee Michael James you'll have to bear with me this is not just my first federal court appearance but also my first Fifth Circuit court appearance your honors in this case the trial court was correct when it suppressed Michael James statements which were made during the course of an illegal detention while the government points to reasonable suspicion as the basis justifying the initial stop and the subsequent detention we would argue that reasonable suspicion number one did not exist in this case because there was a collective knowledge problem number two if reasonable suspicion existed it was dispelled at the moment the search of the vehicle was conducted and concluded and produced no evidence of your opponent just said I thought y'all did concede reasonable suspicion I think at the lower court what was conceded was that lieutenant Webb had reasonable suspicion of drug trafficking not necessarily David and Dietrich who are the officers actually in charge of the traffic stop as your honor pointed out the issue of collective knowledge requires communication not just between the officers but it requires communication of the facts giving rise to the reasonable suspicion here it does not appear that there was any any specific information actually communicated from lieutenant Webb to the officers at the traffic stop I think this is most clearly evidenced by the fact that Sergeant David and Lieutenant Dietrich they didn't ask mr. James any questions about drug trafficking because they simply weren't familiar with the investigation they wouldn't have known what questions to ask in the first place so I don't think that you can actually vest the knowledge that lieutenant Webb had from this investigation to the officers what's your best case on that proposition that you just said my best case would be to contrast it with USB bass which is actually the case that the government sites in USB bass there was an off-duty police officer who saw a gentleman engaging in suspicious activity in a high-crime area where he believed he was selling items out of his the trunk of his car the off-duty officer called an on-duty officer and said hey I think I just observed this gentleman selling drug selling items contraband out of the trunk of his car so the off-duty officer gave the the investigating officer all of the information that he needed all of the facts that were necessary to vest that knowledge with the investigating officer so even though the investigating officer didn't personally observe that suspicious behavior that knowledge was communicated to that officer and collective knowledge was established that's not what happened here the well it's true that you don't have to be the officer who actually observed the illegal activity you have to be aware of what that suspicion okay and what case says exactly that that what happened here would not be enough your honor I don't have a case site for that um I would just contrast it with what was explained in USB bass to establish collective knowledge and say that that standard was not met in this case does the fact that the officers didn't ask any questions about drug trafficking necessarily mean that they had no knowledge it doesn't necessarily mean that they had no knowledge but I think it's important because once this the search of the vehicle was conducted and no evidence was found the officers testified that they were just killing time there was nothing left to be done during this traffic stop investigation there there were no other leads for them to pursue there was no questioning that needed to be done there were no red flags that were raised during the course of the traffic stop which would continue to us to to establish reasonable suspicion if it existed in the first place so the fact that they didn't ask mr. James any questions I think is important because it's clear that they were not investigating anything at the fact that they kept him because if you were driving 70 miles an hour in a 60 mile zone you got pulled over you're unlikely to be stayed any longer than giving you the ticket that's correct and in this case not only was so mr. James was stopped under a pretext for illegal window tint the tint was never measured first of all no citation was ever issued for the illegal window tint the investigating officer didn't know what the statute was which would determine whether or not the tint was illegal however once mr. James gave officer Dietrich his license and registration he never received those back so the officer ran the license and registration no warrants came up the license was not suspended the vehicle was not stolen everything was in order however he never returned those documents to mr. James moreover he was blocked in by at least three police vehicles when he pulled into a McDonald's parking lot he was then blocked in ultimately by three vehicles so the the legal standard for when a Terry stop morphs into a de facto arrest is whether under the totality of the circumstances a reasonable person would not have felt free to leave I don't think anyone would have felt free to leave in this situation and in fact each of the officers testified explicitly that at no point was mr. James free to leave so even though this the search had ended it turned up absolutely no evidence of drug trafficking let alone any criminal activity even though mr. James was you know calm pleasant cooperative his license and registration everything was in order there was nothing left to do except to kill time while the investigation continued and if you look at Massey USB Massey and USB Zavala this court has has held unequivocally that you cannot continue to detain an individual while a full-scale investigation plays out off-site that's precisely what happened in this case so what I'm three vehicles to respond to a window tint violation seems excessive why isn't that more evidence of an ongoing drug investigation I think it's clear there's you know there was an ongoing drug investigation whether or not the reasonable suspicion developed by that investigation actually vests with the officers involved in the traffic stop is a separate question the narcotics agents involved in the investigation I think it's reasonable to assume that they had reasonable suspicion of Michael James activities the question is whether none of those investigating officers were involved in the traffic stop so the question is whether the officers who were actually detaining mr. James had reasonable suspicion however even if they did even if we assume for purposes of argument that they had reasonable suspicion that reasonable suspicion one was not enough to justify what was in effect and arrest and two was dispelled once the search was and no evidence was obtained so we know that a Terry stop can transform into a de facto arrest and that's that's what happened in this case and so even if you take the government's argument you know on its face that there was reasonable suspicion for drug trafficking that still does not cure the illegality of the stop itself the stop required probable cause probable cause is not present in this in this case until you get to the the search warrants which are executed and the actual evidence of drug trafficking was found however mr. James was detained long before those search warrants were put into effect so in this was essentially this was an arrest in search of evidence why wasn't everything that happened in the investigation prior to the stop sufficient to establish probable cause they received information from a cooperating witness they had verified some of that information your colleague on the other side just said they had information that he would be heading back all the information they had was consistent they had evidence of prior drug trafficking activity why wasn't that enough to establish probable cause before he was ever stopped so the the information that Cedric Clay gave them it was not enough to establish probable cause because Cedric Clay himself he was not a confidential informant he was a cooperator he was a source of information he hadn't been vetted he was not known to be trustworthy or reliable the information that he actually gave them was fairly vague if you look at it he gave them the or Big Mike and a phone number and that he would be traveling between Houston Baton Rouge he didn't say anything about the Meridian condominiums he didn't say anything about the life storage facility he didn't say anything about the black Porsche that mr. James would be driving he did say that mr. James would be providing drugs to another gentleman Cedric Kelly I believe Cedric Kelly was never seen interacting with mr. James while he was in Baton Rouge in fact no third party was seen interacting with mr. James while he was in Baton Rouge so really all the information they had was that Michael James exists and this is his phone number but didn't they follow up in investigating that phone number establishing who it belonged to figuring out where he did business what vehicles he drove and what about the officers actually surveilling him and seeing him go to this storage unit and come out with the blue bag if Cedric clay had told them Michael James keeps his drugs at a life storage facility and he's gonna bring him back to his Meridian condominium apartment that's a different situation that's not what Cedric told them he didn't give them any specifics so in effect all of the activity that the officers observed mr. James doing we're not inherently suspect let alone criminal they saw him drive from a residence in Houston to a residence in Baton Rouge they saw him go to a storage facility and leave and then presumably begin to travel back to Houston none of that in and of itself establishes probable cause this is unlike USB Pompa which is a Fifth Circuit case where this court found that there was probable cause to arrest when a traffic stop was conducted within the scope of a of a case is a very specific inquiry but in that case there was no non-nefarious justification or explanation for all of the activity that they had observed the defendants in that case participating in leading up to the traffic stop in this case there's completely innocent explanations to all of this nothing that they observed was actually indicative necessarily of criminal activity people travel from Houston to Baton Rouge all the time without trafficking drugs people go to a storage unit all the time without trafficking drugs that was really all they had except for Cedric Clay's statement regarding what those activities meant but Cedric Clay was not vetted he was not a CI lieutenant Webb who's the one who testified to his trustworthiness and actually really never spoken with him it was Corporal Clay I'm sorry Corporal Clark who actually had the relationship with this gentleman so we really don't know a lot about him or how why we should trust what he's saying about what these actions actually mean so that so in this case no there was not enough to establish probable cause which I think is why on appeal the government now kind of shifts its argument away from probable cause to say okay but there was reasonable suspicion reasonable suspicion of course being a lower standard it's easier to meet however it does not justify again what was in effect an arrest so and that is essentially what the district court found as well although the district court's ruling does not particularly specifically address whether or not there was reasonable suspicion of drug trafficking I think it accepts the you know that premise and states that that mission was dispelled once the search of the vehicle was conducted and no evidence of any drugs were found at that point there is no longer any reasonable suspicion everything having to do with the traffic with the window tint infraction should certainly have been wrapped up even though it wasn't at that point and because there was because that any reasonable suspicion had been dispelled at that point again there was no longer any reason they did argue probable cause in this they do in the alternative it seems but that is their argument to me they didn't call it the alternative but maybe I missed that word but I don't see it I'm sorry I thought I read that word but I do that the bulk of their argument to me seemed to be predicated on reasonable suspicion which I think is notable when it comes to the question of whether or not there was in fact probable cause if again if you look at US visa Vala and USB Massey both of those cases are similar to the instant case and that there was suspicion of of drug activity but categorically not probable cause which would have justified the detention beyond a Terry stop and this detention certainly went beyond a Terry stop even though in both of those cases in Massey and in Zavala what the court finds is that the the off-site investigation so the the application for search warrants and and the execution of search warrants that does not justify the detention and investigation of the defendant you can't just hold the defendant while you while you engage in a full-scale drug investigation hoping in the hopes that you turn up evidence that will retroactively justify that arrest that's what happened here that is an illegal detention and that is why any statements made during the course of that illegal detention were properly suppressed by the district court same question judge Haynes asked Gardner if we if we disagree with you what is the appropriate outcome do you mean versus remanding it to this to the district court I think the district court answered the question of reasonable suspicion and found that even if it existed it was dispelled once the once the search of the vehicle was completed so I don't think we need it to remand for a specific ruling on that issue because I think it was addressed and I and it was in line with Massey and Zavala and consistent with with this court's recent jurisprudence on this issue which is that you cannot continue to detain someone without any evidence that a crime has been committed so I think you have enough in the record before to make to make a ruling without having to remand okay thank you we appreciate your first argument and now we'll hear from your opponents rebuttal miss Gardner Thank You Your Honor speaking to the alternative question it's not alternative in the sense or the other is simply alternative in the sense that the length of detention does not matter you did say I did use the word okay I missed that looking again yes your honor it's used in my heading going into the probable cause argument okay regarding the argument as to the lack of collective knowledge it seems that the defense is conceding that lieutenant Webb had the necessary information as they did below for the facts to support at least a reasonable suspicion of drug trafficking the law in this circuit is very clear that it's not required that all facts be communicated or that all facts oh well no I was I'm sorry I was looking at reasonable suspicion and probable cause you're talking about the dispute of probable cause alternatively that I know yeah I was talking about your page 32 sorry your honor that doesn't say alternatively it's page 60 that does that that may be what she was referring to I was looking at the other thing where you talked about the two concepts of reasonable suspicion oh yes of course that's what I meant so I wasn't wrong but you all were talking about a different section which I appreciate I'm sorry go ahead of course the premise there is that reasonable suspicion and probable cause are two points along the same spectrum so the same facts that support that's what I was looking at support probable cause as they did in the Powell case and we would argue as we did in our brief that the facts here certainly rise even more so to the level of probable cause than did the tip and what's your response to just going from Houston to Baton Rouge is not a criminal act well of course your honor there I'm glad to hear that there is no requirement that the officers actually observe criminal activity that morning probable cause itself which is the higher of the two standards requires a fair probability or a substantial chance of criminal activity not an actual showing here we would argue certainly that mr. Clay's information was not vague as my opponent argues but rather it was specific reliable and predictive and indeed the independent investigation corroborated each and every aspect of mr. Clay's information as lieutenant Webb provided the DEA identified mr. James as a known source of supply out of the Houston area they advised that they had previously monitored him doing a deal at this apartment 616 in the Meridian condominiums and speaking to the information that mr. Clay provided one fact that's left out of the district courts factual recitation is the fact that the DEA and the East Baton Rouge Sheriff's Office identified mr. James's apartment as 616 in the Meridian condominiums where he previously done drug deals and that mr. Clay had advised that James had dealt drugs to him out of an apartment yeah I mean well I understand why you don't want this oppression to remain and you want his confession I get that don't you think you have enough evidence without that I certainly would say that we have a strong case your honor however the facts show that mr. James's son and his girlfriend were physically present in the apartment at the time that they executed the search so mr. James's statements are not so important to establish the quantity of the drugs obviously mr. James undersold how many drugs he had he didn't confess to having just under 40 pounds of fentanyl in a storage unit but it does speak to his knowing possession of those drugs which of course could be a readily available argument for the defense at trial the fact that we haven't litigated that issue now in a pretrial posture before the district court certainly doesn't speak to the fact that that would be available to them at trial in front of a jury so we certainly don't want to proceed to trial on less than the full spectrum of evidence that's lawfully available to us speaking to my opponent's arguments about the the officers officers saying that they were quote killing time the record reflects that at the time that sergeant David made that statement he was referring to a period of time in which the narcotics officers were undergoing a engaging in a continuous series of investigative actions they were seeking that rent roll search warrant they were obtaining that warrant they were serving it on the management they were identifying the exact storage unit that was held in mr. James's name so there was never a time when this larger narcotics investigation was quote stalling or killing time or just engaging in delay tactics and speaking to I believe we've covered the collective knowledge component sufficiently but the Massey case that the defendants themselves have cited also speaks to the fact that the facts that are known to law enforcement officers that support a reasonable suspicion need not come from direct law enforcement contact they can actually be provided to the officers prior to that contact in the Massey case that was provided by a mock which is that I believe Air Marine Operations Center I might be messing up that acronym but all that information there are three facts that were known prior to them engaging with the plane okay yeah your time is up and I do I do know about the I do want to make sure you all know I knew about the alternatively but that wasn't what I was addressing in my earlier discussion with you also don't think I didn't read that part of your briefing and and I'm well aware of it so thank you both for your arguments and the case is under consideration thank you your honor